1
2
3
4
5          **IN THE UNITED STATES DISTRICT COURT**

6          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

7

8  LISA WILKINS,                                    Case No. 1:07-cv-01124 OWW TAG

                    Plaintiff,                       FINDINGS AND RECOMMENDATIONS
9                                                    ON APPEAL FROM A FINAL
          vs.                                        ADMINISTRATIVE DECISION
10
   MICHAEL J. ASTRUE,
11 Commissioner of Social Security,

12                  Defendant.
                                            _____/
13

14         Plaintiff Lisa Wilkins ("Claimant") seeks judicial review of an administrative decision

15 denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security

16 Act (the "Act"), 42 U.S.C. § 1381 et seq.  (Doc. 2).  Pending before the Court is Claimant's appeal

17 from the administrative decision of the Commissioner of Social Security ("Commissioner").

18 Claimant filed her complaint on August 2, 2007 (Doc. 2), and her opening brief on June 9, 2008.

19 (Doc. 19).  The Commissioner filed his opposing brief on July 9, 2008.[1]  (Doc. 23).  Claimant did

20 not file a reply brief.

21                                  **JURISDICTION**

22         On June 23, 2004, Claimant protectively filed an application for SSI payments.

23 (Administrative Record ("AR") 77-85).  Claimant's application was denied initially and on

24 reconsideration.  (AR 24, 30, 36-49).  After timely requesting a hearing, Claimant and her counsel

25

26         [1]  The Plaintiff and the Commissioner entitle their respective briefs as motions for summary judgment.  (Docs.
   19, 23).  Although briefs filed in Social Security cases in this district previously were deemed summary judgment
27 motions, for several years this Court has designated the documents as "opening briefs," "responses" or "oppositions," and
   "reply briefs."  (See, e.g., Doc. 7, Scheduling Order, setting forth deadlines for filing the various briefs).  These Findings
28 and Recommendations continue the trend of using the nomenclature set forth in the Scheduling Order.

                                            1

appeared before Administrative Law Judge ("ALJ") Christopher Larsen on November 1, 2006. (AR 53, 338-360). On February 22, 2007, the ALJ issued a decision that was partially favorable to Claimant. (AR 14-23). The Appeals Council denied Claimant's request for review of the adverse portion of the ALJ's decision on June 5, 2007. (AR 5-8). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court. 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeals Council's decision. Id. On August 2, 2005, Claimant timely filed this action. (Doc. 2).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and stipulated or set forth in the briefs filed by the parties, and, therefore, will only be summarized here. In her SSI paperwork, Claimant alleged an inability to work due to lower back pain and, in general, a bad back and problems with her right femur, all of which were traceable to a 1987 car accident. (AR 90-95). She alleged an onset date of June 23, 2004. (AR 87, 91). In response to a pain questionnaire, Claimant stated that she has suffered burning, cramping pain, numbness, and headaches throughout her body continuously since May 11, 1986. (AR 97). Claimant further indicated that, in addition to taking pain medication, which caused various side effects, she walks with a cane. (AR 98).

At the November 1, 2006, administrative hearing, Claimant testified that she was born on March 13, 1960, making her 46 years' old at the time of ALJ Larson's decision, and had completed the eighth grade of school.[2] (AR 343-344). Claimant added that she had not worked for the previous 15 years. (AR 344). She lives in an apartment with her boyfriend, who does the things that she cannot. (AR 349, 354). Claimant stated that she underwent surgery to prevent the further compression of her C5 and C7 spinal discs and confinement to a wheelchair. (AR 344). Both before and after the surgery, Claimant reported that she suffered from, inter alia, numb hands and finger pain, which made it difficult to grasp objects without dropping them. (AR 344-347).

---

[2] Paperwork related to Claimant's SSI application reported that she attended school through the ninth grade. (AR 87, 94).

1    Claimant further testified that, before the surgery, she suffered from neck pain that rendered

2   her incapable of moving her neck except a little bit to the side.  (AR 345).  She added that, although

3   occasionally she could reach in front of her with her arms, she could not move her arms above her

4   head.  (Id.).  Claimant reported that, if wrote more than 20 minutes, her index fingers would

5   become painful.  (AR 346).  In addition, Claimant noted that she could use her right hand to lift some

6   items, such as a one-half gallon of milk.  (AR 347).  Claimant further stated that, using her cane, she

7   could walk ten yards before the pain in her back, neck, knees, and feet necessitated that she stop.

8   (AR 348).

9    Claimant testified that, in general, the surgery worsened her problems.  (AR 349).  She

10   specified that her neck did not improve except to the extent that, despite the chronic pain, it was

11   slightly more mobile.  (AR 348-349, 351-352).  Claimant stated that her "walking got way worse,"

12   noting that her left leg "turned in more."  (AR 349).  In addition, she reported that she no longer has

13   any strength in her arms and could not reach in front of her.  (Id.).  Claimant further testified that,

14   since June 2006, she has had daily bowel accidents.  (AR 350).

15    Regarding her activities of daily living, Claimant testified that she cannot comb her hair,

16   brush her teeth, dress herself, or otherwise care for her personal hygiene because the muscles in her

17   arms were weak.  (AR 349-351).  According to Claimant, she can hold utensils and drink out of a

18   cup using both hands, but is not able to hold a plate.  (AR 351).  She does no housework, laundry, or

19   cooking.  (AR 354).  Claimant stated that she drives only when she has a doctor's appointment.  (AR

20   354).  She added that she has no social activities and spends her days laying down watching

21   television.  (AR 355).

22    With respect to her treatment and exertional abilities, Claimant testified that she cannot bend,

23   and was able to sit and stand a maximum of fifteen minutes.  (AR 352-353).  Claimant testified that

24   she lays down approximately 3/4 of the day, which relieves the pain.  (AR 353).  In addition, her

25   prescription medication  – neurontin (Gabentin) and hydrocodone (Vicodin) – helps alleviate the

26   pain slightly and causes no side-effects other than sleepiness.  (Id.).  Claimant explained that during

27   the time that the medicine enables her to sleep, she is pain-free, but upon awakening the pain returns.

28   (Id.).  Further, Claimant reported that, at least four times daily, she uses a TENS unit for a minimum

3

1    of one hour each time.  (AR 354).

2         Vocational Expert Thomas Dachelet ("VE" or "VE Dachelet") then testified regarding

3    whether there were jobs in the national and regional economy that a hypothetical individual with

4    differing limitations and exertional capacities could perform.  (AR 356-359).  The ALJ's first

5    hypothetical question presented a 46-year-old person with an 8th grade education; no past relevant

6    work experience; and the residual functional capacity ("RFC") to:  lift and/or carry 10 pounds

7    frequently and 20 pounds occasionally; stand, walk, and/or sit six hours in an eight hour day;

8    frequently balance and kneel; occasionally stoop, crouch, crawl and climb ramps or stairs but never

9    climb ladders, ropes, or scaffolds; occasionally reach overhead; and occasionally look overhead with

10   no restrictions on looking downward.  (AR 356-357).  The VE testified that, because of the

11   restriction on the ability to look upward, there would be an exception to the Dictionary of

12   Occupational Titles ("DOT"), but that the individual still could perform two-thirds of the 80,933

13   sedentary, unskilled jobs available in California.  (AR 357).  The second hypothetical involved the

14   same person, but with an RFC that limited her to standing and walking one hour, and sitting no more

15   than two hours, in an eight-hour day.  (Id.).  In addition, the individual could only occasionally

16   handle, finger, and feel.  (AR 358).  The VE testified that the there were no jobs in the national or

17   regional economy that this hypothetical person could perform.  (Id.).  Claimant's attorney questioned

18   whether a person with the following RFC could work: lifting and carrying 10 pounds frequently and

19   occasionally; standing and walking with an assistive device; and limited to occasional climbing,

20   stooping, kneeling, balancing, reaching, crouching, crawling, pushing, pulling, reaching, and gross

21   handling with both hands.  (Id.).  The VE responded that, because of the hand restrictions, this

22   person could not perform sedentary, unskilled work.  (Id.).  Finally, VE Dachelet stated that, other

23   than the exception to the DOT with respect to the hypothetical individual's ability to perform a full

24   range of sedentary, unskilled work due to the neck limitation, his testimony was consistent with the

25   characteristics of the jobs set forth in the DOT.  (Id.).

26                                    **STANDARD OF REVIEW**

27        Congress has provided a limited scope of judicial review of a Commissioner's decision.

28   42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision to deny benefits, made

                                              4

1  through an ALJ, when the decision is based on the proper legal standards and is supported by

2  substantial evidence.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence is

3  more than a mere scintilla but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-

4  602 (9th Cir. 1989) (quotations omitted).  It is "such relevant evidence as a reasonable mind might

5  accept as adequate to support a conclusion."  Webb, 433 F.3d at 686, citing Richardson v. Perales,

6  402 U.S. 389, 401, 91 S. Ct. 1420 (1971).  Moreover, such "inferences and conclusions as the

7  [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is

8  substantial evidence as defined above.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On

9  review, the Court must consider the record as a whole, not just the evidence supporting the decision

10  of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation

11  omitted).

12          It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson,

13  402 U.S. at 400.  If the evidence supports more than one rational interpretation, the Court must

14  uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  If there is

15  substantial evidence to support the administrative findings, or if there is conflicting evidence that

16  would support a finding of either disability or non-disability, the Commissioner's decision is

17  conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

18  supported by substantial evidence will be set aside if the proper legal standards were not applied in

19  weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human

20  Services, 839 F.2d 432, 433 (9th Cir. 1988).

21                              **RELEVANT LEGAL FRAMEWORK**

22          The Social Security Act defines "disability" as the "inability to engage in any substantial

23  gainful activity by reason of any medically determinable physical or mental impairment which can be

24  expected to result in death or which has lasted or can be expected to last for a continuous period of

25  not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides

26  that a claimant shall be determined to be under a disability only if her impairments are of such

27  severity that claimant is not only unable to do her previous work but cannot, considering claimant's

28  age, education and work experiences, engage in any other substantial gainful work which exists in

5

1   the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

2   **SEQUENTIAL EVALUATION PROCESS**

3   **Initial Disability Evaluation**

4     The Commissioner has established a five-step sequential evaluation process for determining

5   whether a person is disabled under Title XVI of the Act.  20 C.F.R. § 416.920.  At Step One, the ALJ

6   determines if the claimant is engaged in substantial gainful activities.  If he is, benefits are denied.

7   20 C.F.R. § 416.920(a)(4)(I), (b).  If he is not, the ALJ proceeds to Step Two, at which point he

8   determines whether the claimant has a medically severe impairment or combination of impairments

9   that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are

10  expected to result in death or continuously lasted or are expected to last at least twelve months.

11  20 C.F.R. § 416.920a(4)(ii), (c).  If the claimant does not have a severe impairment, a combination of

12  impairments, or meet the duration requirement, the disability claim is denied.  Id.

13    If the impairment is severe, the evaluation proceeds to Step Three, which compares the

14  claimant's impairment with a number of listed impairments acknowledged by the Commissioner to

15  be so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii), (d);  20 C.F.R.

16  Pt. 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments and

17  satisfies the duration requirement, the claimant is conclusively presumed to be disabled.

18  20 C.F.R. §§ 416.909, 416.920(a)(4)(iii), (d).  If the impairment is not one conclusively presumed to

19  be disabling, the evaluation proceeds to Step Four, requiring the ALJ to determine whether the

20  impairment prevents the claimant from doing work performed in the past.  If the claimant is able to

21  perform his previous work, he is not disabled.  20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b).  If

22  the claimant cannot perform this work, at Step Five, the ALJ determines whether the claimant is able

23  to perform other work in the national economy in view of his age, education and work experience.

24  20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c).  See Bowen v. Yuckert, 482 U.S. 137,

25  107 S. Ct. 2287 (1987).

26    The initial burden of proof rests upon a claimant to establish that he "is entitled to the

27  benefits claimed under the Act."  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations

28  omitted).  In terms of the five-step sequential evaluation process, the Ninth Circuit has held that

1    "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that

2    an ALJ's *affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of

3    burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098

4    & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once a claimant establishes that a

5    physical or mental impairment prevents him from engaging in his previous occupation.  The burden

6    then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful

7    activity and (2) that a "significant number of jobs exist in the national economy" which claimant can

8    perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

9    **Cessation of Disability Evaluation**

10           In order to determine whether a claimant's disability is continuing or has ceased, and,

11   therefore, whether the claimant no longer is entitled to disability benefits, an eight-step process is

12   followed.  Griego v. Sullivan, 940 F.2d 942, 944 n. 1 (5th Cir. 1991)(eight-step process for analyzing

13   whether disability benefits should terminate); Aikens v. Shalala, 956 F. Supp. 14, 16 & n.2 (D.D.C.

14   1997)(same).[3]  At Step One, the issue is whether the claimant is engaged in substantial gainful

15   activity.  20 C.F.R. §§ 404.1594(f)(1).  If so, claimant's disability is deemed terminated.  Id.

16           At Step Two, the issue is whether claimant's impairment meets or equals the impairments set

17   out in the Listing of Impairments.  If so, benefits continue.  20 C.F.R. §§ 404.1594(f)(2),

18   416.994(b)(5)(i).  At Step Three, reached if a claimant's impairments do not meet the Listing of

19   Impairments, the issue is whether there has been any medical improvement since the original

20   determination of disability.  If there has been medical improvement, as shown by a decrease in

21   medical severity, the ALJ proceeds to Step Four.  Otherwise, and absent medical improvement, the

22   ALJ proceeds to Step Five.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii).

23           At Step Four, the ALJ must determine whether a medical improvement is related to the

24   claimant's ability to do work, i.e., whether there has been an increase in his RFC.  If so, the ALJ

25   proceeds to Step Six.  Otherwise, and absent an ability to perform work (as with an absence of

26

27           [3]  SSI continuing disability determinations delete the first step, i.e., whether claimant is engaged in substantial gainful activity.  See 20 C.F.R. § 416.994(b)(5).  The remaining seven steps are followed.  Hence, the subparagraph numbering of section 416.994(b)(5) corresponds to that of section 404.1594(f), but offset by the missing first step in SSI analysis.

28

1    medical improvement), the ALJ proceeds to Step Five.  20 C.F.R. §§ 404.1594(f)(4),

2    416.994(b)(5)(iii).  Step Five applies in either of the following situations: if there has been no

3    medical improvement or if the improvement is unrelated to the claimant's ability to do work.

4    20 C.F.R. §§ 404.1594(f)(3) and (4), 416.994(b)(5)(ii) and (iii).  At Step Five, the ALJ determines

5    whether any of the two groups of exceptions to the medical improvement standard of review apply.

6    20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If no exceptions apply, the claimant's disability

7    continues; if the first group of exceptions apply, then the ALJ proceeds to Step Six; and if the second

8    group of exceptions apply, the claimant's disability is terminated.  Id.

9        Alternatively, if the claimant's medical improvement is related to his ability to do work (or if

10   one of the Step Five group of exceptions applies), the ALJ proceeds to Step Six.  At Step Six, the

11   ALJ determines whether the claimant's impairments are sufficiently severe so as to limit his physical

12   or mental abilities to do basic work activities.  If they are not sufficiently severe, disability is

13   terminated.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the claimant's impairments are

14   sufficiently severe then, at Step Seven, the ALJ assesses the claimant's current RFC to determine

15   whether he can perform work that he previously did.  20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).

16   Once again, if he can perform past work, disability terminates.  Otherwise, the ALJ proceeds to Step

17   Eight.  Id.

18       Finally, at Step Eight, reached if the claimant cannot perform past work, the ALJ considers

19   whether, given the claimant's age, education, past work experience, and RFC, the claimant can

20   perform other work.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If so, disability terminates.

21   Otherwise, benefits continue.  Id.

22                    **ADMINISTRATIVE FINDINGS**

23       ALJ Larsen initially noted that he had to ascertain whether Claimant was entitled to SSI

24   benefits due to medical impairments and, if so, whether her medical condition improved such that

25   she no longer was disabled.[4]  (AR 15).  He therefore provided two separate sequential evaluations –

26   ───────────────────────

27       [4]  This is commonly referred to as a case involving a closed period of disability.  See Jones v. Shalala, 10 F.3d
     522, 524 (7th Cir. 1993); Mendoza v. Apfel, 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000) (after determining claimant was

28   disabled, stating that, in assessing whether the disabling impairment ceases, the "medical improvement standard applies

                                    8

1   one addressing Claimant's alleged disabling impairments and the second discussing whether, and to

2   what extent, her medical condition improved.

3                      **First Period: Onset Date to October 31, 2005**

4          At Step One, the ALJ found that, because Claimant had never worked, she had not engaged

5   in substantial gainful activity since her alleged onset date of June 23, 2004.  (AR 15, 21-22).  At Step

6   Two, he noted that Claimant had no severe impairments from June 23, 2004 through October 1,

7   2004.  (AR 16, 22).  The ALJ determined that, as of October 1, 2004, Claimant suffered from the

8   following severe impairments: degenerative disc disease, disease of the cervical spine at C5-6 and

9   C6-7, cervical myelopathy with radiculopathy, and status post-cervical discectomy and spinal cord

10  compression.  (Id.).  At Step Three, the ALJ found that Claimant did not have an impairment or

11  combination of impairments that were among those acknowledged by the Commissioner to be so

12  severe as to preclude substantial gainful activity, and, therefore, she did not meet or equal a listing

13  under 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Id.).

14         Before addressing Step Four and Five findings, ALJ Larsen determined Claimant's RFC.

15  (AR 16).  In doing so, the ALJ discussed the results of Claimant's October 2004 x-ray (AR 137) and

16  February 1, 2005 magnetic resonance imaging (MRI) results, and noted her consistent subjective

17  complaints from October 2004 and April 2005, all of which indicated that she suffered upper

18  extremity and neck pain in addition to the impairments he previously mentioned.  (AR 16).  The ALJ

19  also reported that Claimant underwent back surgery in June 2005 (AR 317-320).  (AR 16).  The ALJ

20  concluded that, given that Claimant suffered severe pain, required several months to recuperate from

21  the back surgery, and in light of the record evidence, she lacked the ability to "maintain the

22  concentration, persistence, and pace required for full-time work," and other limitations precluded her

23  from working during the relevant time period.  (AR 17).  Based on the foregoing, the ALJ felt it

24  unnecessary to address Steps Four and Five, and instead found Claimant disabled by pain, secondary

25  to back surgery, and thus eligible for SSI benefits from October 1, 2004 through October 31, 2005.

26  (Id., AR 22-23).  ALJ Larsen, however, noted that there was evidence that Claimant's impairments

27

28  to cases, such as here, involving a closed period of disability")

1    improved, requiring that he determine whether she remained disabled.  (AR 17).

2              **Second Period: November 1, 2005 to February 22, 2007**[5]

3              Applying 20 C.F.R. § 404.1594(f)[6] to ascertain if Claimant's disability continued, at Step

4    One, ALJ Larsen found that Claimant was not engaging in substantial gainful activity.  (AR 17).  At

5    Step Two, he concluded that, post-surgically, Claimant did not have a severe impairment or

6    combination of impairments that met or equaled a listing under 20 C.F.R. Pt. 404, Subpt. P, App. 1,

7    including Listing 1.02 (the inability to use the upper extremities).  (AR 18, 22).  At Step Three, the

8    ALJ found that the evidence indicated that there was a decrease in the medical severity of Claimant's

9    impairments that were present at her most recent favorable medical decision, which constituted a

10   medical improvement.  (Id.).  Specifically, the ALJ noted that a September 2005 cervical spine x-ray

11   (AR 297), demonstrated an improvement over Claimant's October 2004 and February 2005

12   radiological test results, and, subjectively, Claimant reported that she felt better.  (AR 18, 285).

13             At Step Four, the ALJ found that "[t]here is no question [Claimant] has experienced an

14   increase in her residual functional capacity after October, 2005" due to her medical improvement,

15   based on her impairments at the time he previously found her disabled.  (AR 18, 22).  The ALJ

16   concluded that the June 2005 surgery "resolved both the anatomic abnormality that was the cause of

17   Claimant's pain and much of her pain as well," which had prevented her from working.  (AR 18).

18   At Step Five, the ALJ found that Claimant presently suffered many of the same severe impairments

19   as previously, including degenerative disc disease and cervical myelopathy, and he also found that

20   she suffered from mild disc dessication with broad-based disc bulges along the lumbar spine and

21   mild bilateral carpal tunnel syndrome.  (AR 19, 22-23).

22             ALJ Larsen determined Claimant's present RFC before rendering his Step Six finding as to

23   whether she is capable of performing her past work.  (AR 19).  The ALJ discounted Claimant's

24

25   _____

26        [5]  This period extends to the date that the Appeals Council denied Claimant's request for review on June 5, 2007.  (AR 5-7).

27        [6]  Because Claimant was disabled under Title XVI (SSI), not Title II (DIB), the applicable regulation for cessation of disability is 20 C.F.R. § 416.994(b)(5), not 20 C.F.R. § 404.1594(f).  As noted in fn. 3, the two regulations

28   are virtually identical such that ALJ's application of § 404.1594(f) in and of itself does not constitute legal error.

1   record and testimonial complaints of pain due to her drug-seeking behavior and testimonial

2   statements that called her credibility into doubt.  (AR 18-20).   The ALJ reasoned that  "[a]lthough

3   the evidence continues to support her complaints of pain, and, consequently, some continuing

4   functional limitations, it is not so compelling to overcome the credibility problems I have already

5   discussed."  (AR 20).  The ALJ relied on the state agency physician's July 2005 RFC assessment,

6   which he adjusted to incorporate evidence of Claimant's subsequent medical diagnoses, over the two

7   treating physicians' assessments.  (AR 20, 175-186).  The ALJ concluded that the treating

8   physicians' opinions failed to provide supporting evidence and appeared to be based solely on

9   Claimant's subjective complaints.  (AR 20-21).  He found that Claimant's increased RFC enabled

10  her to lift and carry 10 pounds frequently and 20 pounds occasionally; sit for six hours; stand and

11  walk for two hours; frequently balance or kneel; occasionally stoop, crouch, crawl, and climb ramps

12  or stairs; occasionally reach and look overhead; but cannot climb ladders, ropes, or scaffolds.  (AR

13  21, 23).

14          Because Claimant had no past relevant work, the ALJ continued to Step Seven[7] and found

15  that, given Claimant's RFC, and based on the testimony of VE Dachelet, Claimant could perform

16  unskilled, sedentary jobs, of which there were significant numbers in both California and the national

17  economy.  (AR 21, 23).  Accordingly, the ALJ found that, as of November 1, 2005, Claimant could

18  perform available work and, therefore, Claimant's disability ended, and she has not been entitled to

19  benefits, since January 1, 2006.  (Id.); see 20 C.F.R. § 416.1331(a).

20                                          **ISSUES**

21          Claimant's opening brief asserts that the ALJ erroneously found that her medical condition

22  had improved as of November 1, 2005.  Claimant raises the following arguments.

23      **(A)  Claimant's medical condition did not improve**

24          (1) There was insufficient evidence to support a finding of medical improvement; and

25          (2) The ALJ improperly found that Claimant's medical improvement increased her RFC.

26  ///

27

28          [7]  The ALJ misstated the number of the last step, which should be Step Eight of 20 C.F.R. § 404.1594(f),
    although, had he applied the SSI regulation, the final step would be Step Seven, 20 C.F.R. § 416.994(b)(5)(vii).

**(B)  The ALJ improperly accorded controlling weight to the opinions of state agency physicians**

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

The arguments Claimant raises to support her claims are addressed below.

**(A) Claimant's medical condition did not improve**

Claimant's general argument is that, contrary to the ALJ's findings, she remains incapable of engaging in substantial gainful activity because she is "status post cervical discectomy and spinal cord compression, cervical myelopathy, failed cervical surgery, and continuing cervical disc disease." (Doc. 19, p. 2).  Claimant contends that the ALJ erroneously concluded that her medical condition improved since he first found her disabled and, even had her condition improved, it was not related to an increase in her RFC.

(1) There was insufficient evidence of medical improvement

Claimant argues that the ALJ's finding of medical improvement hinges on isolated evidence that her back problems improved after the June 2005 surgery.  (Doc. 19, pp. 5-7).  Specifically, Claimant contends that the ALJ found that her medical condition had improved as of November 1, 2005, based on a comparison of the results of October 2004 and September 2005 radiological examinations of her back, and a statement made by Claimant in October 2005 indicating that she felt better.  (Id. at 5).  Claimant avers that, although the ALJ[8] acknowledged that she suffered from the same impairments both before and after her surgery, he found a decrease in the medical severity her impairments.  (Id. at 4-5).  In addition, Claimant argues that, because the ALJ did not specify why he found Claimant disabled through October 31, 2005, there was nothing against which the ALJ could base his determination of medical improvement after that date.  (Id. at 5).

---

[8]  The medical evidence that Claimant cites includes records submitted to the Appeals Council that were not available when the ALJ issued his decision.  Gomez v. Charter, 74 F.3d 967, 971 (9th Cir. 1996); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); 20 C.F.R. 416.1470.

(a)  Medical improvement

Once a claimant is eligible for disability benefits, the benefits can be terminated if the claimant's impairments have medically improved and the improvement enables the claimant to engage in substantial activity.  42 U.S.C. § 423(f); 20 C.F.R. §§ 404.1594(a), 416.994(b)(5); Reefer v. Barnhart, 326 F.3d 376, 378, n.1 (3rd Cir. 2003); Halasz v. Apfel, 2001 WL 253225, *2 (N.D.Cal. 2001).  A medical improvement is "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled."  20 C.F.R. §§ 404.1594(b)(1) and (f)(4), 416.994(b)(1)(i) and (b)(5)(iii); Griego v. Sullivan, 940 F.2d at 944.  Any finding that the claimant's medical severity has decreased "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with" the claimant's impairments.  Id..  In the instant case, because the ALJ first decided that Claimant was disabled on October 1, 2004, that is the "most recent favorable medical decision."

(b)  Evidence of medical improvement

In his decision, the ALJ summarized the majority of Claimant's impairments, treatments, and RFC from soon after her alleged onset date through his February 22, 2007 decision and concluded that, from a diagnostic standpoint, there was a medical improvement, or decrease in the medical severity of Claimant's impairments.  (AR 16-23).

During a visit to the emergency room[9] on December 24, 2004, a doctor noted that the results of an October 26, 2004 x-ray of Claimant's cervical spine showed that she had degenerative disc disease with spondylosis[10] at C5-C6 and C6-C7, narrowing with post spurs resulting in moderate-to-severe encroachment on neural foramen (openings).  (AR 137).  On June 15, 2005, Claimant underwent surgical procedures to correct her back problems, including a C5-C7 cervical discectomy, a microdiscectomy, and a bilateral decompression of the spinal canal and foraminotomy at C5-C7.

---

[9]  Claimant sought most of her health care treatment from the University Medical Center Emergency Room or Clinic, regardless of the nature of the illness.  This resulted in an array of physicians treating her, frequently for subjective complaints, which prevented a consistent, longitudinal portrait of her impairments and treatment by a specific doctor.  (See generally AR).

[10]  A condition in which the vertebral joints become fixed or stiff, causing pain and decreased mobility.  Mikel A. Rothenberg, M.D. et al., Dictionary of Medical Terms (Fifth Ed. 2006).

1  (AR 317).

2      The x-rays taken during the surgery and through November 1, 2005, confirmed that the

3  surgery succeeded in anatomically aligning Claimant's cervical spine and that she had only mild

4  degenerative changes.  (AR 18, 286, 297, 300, 308-309). In evaluating whether there was a medical

5  improvement, the ALJ compared the results of Claimant's pre-surgery x-ray and MRI with her

6  post-surgery x-ray.  The pre-surgery x-ray showed cervical spine narrowing and radiculopathy, and

7  the pre-surgery MRI  showed possible cord edema and moderate to severe stenosis.  The post-

8  surgery x-ray showed anatomical alignment, unremarkable vertebral bodies, and mild stenosis.

9  These medical records reflect a medical improvement since October 1, 2004.[11] (AR 18).

10     The ALJ properly considered Claimant's post-surgery statements to her physician, in

11  determining whether there had been a decrease in the severity of Claimant's symptoms.  At an

12  October 21, 2005 medical examination, Plaintiff told her treating physician that she felt "better" and

13  her pain was "better." (AR 18, 285).  The ALJ noted these statements in his assessment, along with

14  Claimant's comments that she felt numbness in her joints, arms, and knees. (AR 18).

15     The post-surgery changes noted by the ALJ constituted an improvement in symptoms, signs,

16  or laboratory findings associated with Claimant's impairments.  After the surgery, Claimant's spine

17  had anatomically aligned, she no longer had moderate to severe stenosis, and she felt better and

18  experienced less pain.  Although the ALJ did not dispute that Claimant had multiple impairments,

19  there is sufficient evidence that Claimant's medical condition improved  so as to warrant a finding

20  that she no longer was disabled after October 2005.

21  ///

22

23  ─────────────────────

24      [11] The administrative record contains other medical records showing an improvement in Claimant's medical
conditions. On December 9, 2005, Claimant's treating physician reported that her x-rays showed "excellent" fusion and
alignment. (AR 274).  On December 21, 2005, Claimant underwent a physical examination which showed no abnormal

25  clinical findings. (AR 269).  The medical progress notes report that by May 2006, Claimant's treating physician reported
her cervical symptoms were stable.  (AR 243).  Claimant's medical improvement is also reflected in the results of

26  additional diagnostic tests taken in  2006 and 2007.  Claimant's May 18, 2006 MRI showed only mild to moderate
stenosis and was an improvement over the results of her February 2005 MRI.  (AR 246).  Claimant's March 1, 2007

27  computerized axial tomography (CT) cervical myelogram showed no spinal stenosis or disc bulging other than at  C5 to
C7 and only moderate spinal canal narrowing, which was also an improvement over the results of Claimant's February

28  2005 MRI. (AR 334).

1          (2) The ALJ improperly found that Claimant's medical improvement increased her RFC

2          According to Claimant, the ALJ did not demonstrate that there was an increase in her ability

3  to work, or RFC, as a result of the improvement in her medical condition since October 1, 2004.

4  (Doc. 19, pp. 7-10).  Claimant contends that the ALJ erred in relying on the non-examining state

5  agency physicians' 2005 RFC assessments because he implicitly rejected them when he found her

6  disabled in October 2004, and because they did not contain medical evidence relevant to the post-

7  disability period.  (Id. at 9-10).

8          (a) Standards for determining RFC

9          Determination of a claimant's RFC falls between the sequential steps and is for the ALJ to

10  determine.  See Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (discussing

11  determination of RFC in the initial five-step evaluation).  Under Social Security Ruling 98-6p and

12  pertinent regulations

13          RFC is the individual's maximum remaining ability to do sustained work activities in
           an ordinary work setting on a regular and continuing basis, and the RFC assessment
14         must include a discussion of the individual's abilities on that basis. A "regular and
           continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work
15         schedule. RFC does not represent the least an individual can do despite his or her
           limitations or restrictions, but the most. RFC is assessed by adjudicators at each level
16         of the administrative review process based on all of the relevant evidence in the case
           record, including information about the individual's symptoms and any "medical
17         source statements" – i.e., opinions about what the individual can still do despite his or
           her impairment(s) – submitted by an individual's treating source or other acceptable
18         medical sources.

19  SR 98-6p; see 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.

20          The United States Court of Appeals for the Ninth Circuit has held that, when an ALJ

21  determines a claimant's RFC, he must consider all of the relevant evidence, including, but not

22  limited to, medical records, consultative reports ordered by the Commissioner, physicians' reports,

23  and subjective statements concerning symptoms and pain, to the extent that the ALJ finds the latter

24  credible.  Id.; Robbins v. Social Security Admin., 466 F.3d 880, 883 (9th Cir. 2006).  Acceptable

25  physicians' reports include those from licensed physicians and licensed or certified psychologists,

26  including state agency physicians.  20 C.F.R. §§ 416.04.1513, 416.913, 416.927(f)(2)(1).  The ALJ

27  need not accept a conclusory opinion from an acceptable medical source, even if rendered by a

28  treating physician, if the opinion is unsupported by clinical findings.  Tonapetyan v. Halter, 242 F.3d

15

1144, 1149 (9th Cir.2001); Magallanes v. Bowen, 881 F.2d 747,  751 (9th Cir. 1989).

In a "cessation of disability" case, the ALJ must ultimately determine whether there is medical improvement that results in an increase in the claimant's ability to work, or RFC, by ascertaining whether the RFC has improved since the claimant's most favorable determination, i.e., when she was found disabled, and that the claimant retains the ability to work despite the occurrence of any additional impairments.  20 C.F.R. §§ 405.1594(f)(3)-(f)(8), 416.994(b)(5)(ii)-(5)(vii).

(b) Claimant's RFC

ALJ Larsen initially concluded that Claimant's RFC increased after October 31, 2005, because the surgery had sufficiently resolved the pain upon which he found her disabled on October 1, 2004.  (AR 18).  He further noted that Claimant's allegations of severe pain lacked credibility, and that alternative methods of pain relief had proved beneficial.  (AR 18-19).  The ALJ then noted that Claimant continued to suffer from many of the same ailments as she did pre-surgically, and diagnostic evidence revealed that she had developed additional spinal impairments, all of which were severe impairments that did not meet or equal the listings.  (AR 19, 22).  The record shows that post-surgically, Claimant's radiological tests revealed disc extrusions and bulges in the thoracic and lumbar spine and central spinal stenosis (AR 245-246); cord edema,  spastic ambulation, and bilateral weakness and muscle atrophy in her arms (AR 263); and mild bilateral carpal tunnel syndrome (AR 263-264).  However, there is nothing in the record that prevented Claimant from engaging in physical actions.  (See generally AR).

In determining that Claimant could perform light work, the ALJ relied in part on the clinical findings of Claimant's treating physicians, which indicate that Claimant's condition improved after her June 2005 back surgery.  (AR 17-20, 230-286, 308-324, 333).  Their medical progress reports state that surgery resolved much of Claimant's pain, and as discussed above, she reported that she felt better and her pain had improved.  (AR 274, 282-286).  A December 2005 examination of Claimant revealed no abnormal clinical findings, and by May 2006, her physicians concluded that her cervical symptoms were stable. (AR 243, 263, 274, 282-286).  A June 2006 EMG report showed Claimant's status as normal with no evidence of neuropathy.  (AR 235-236).  Two months later, Claimant's physician assessed her physical condition as normal.  On October 16, 2006, the medical

16

1   progress notes show that Plaintiff refused to be examined, but had returned to request disability and

2   pain medication. (AR 333).  At that time, she was not assessed with any functional limitation. (Id.).

3        In determining Claimant's RFC and whether her medical improvement was related to an

4   increased RFC,  ALJ Larsen also reviewed the state agency physician's assessments,[12] considered

5   Claimant's subsequent impairments, and, after discounting her subjective pain complaints and the

6   degree to which she testified she could not perform her activities of daily living, found that Claimant

7   currently retained the RFC to

8        lift and carry 10 pounds frequently and 20 pounds occasionally, to sit for 6 hours in an
     8-hour workday, and to stand or walk for a total of 2 hours.  She can never climb
9        ladders, ropes or scaffolds, and she can occasionally stoop, crouch, crawl, and climb
     ramps or stairs.  She can "frequently" balance or kneel, and she can occasionally reach
10       and look overhead.

11  (AR 21, 23).

12       (c) Claimant's credibility

13       The ALJ also considered Claimant's credibility.  The hearing transcript and medical records

14  contain statements by Claimant that she suffered disabling post-surgery pain.  The ALJ rejected these

15  complaints as not credible, finding that "[t]here are too many notations of [Claimant's] drug-seeking

16  to enable me to accept wholesale her complaints of disabling pain. [Claimant's] lack of any work

17  history also undercuts her claim that she would be working but for her impairments and the disabling

18  pain they cause. " (AR 20).  The ALJ also extended his "skepticism to [Claimant's ] testimony at the

19  hearing," with respect to Claimant's functional capacity, noting that he found her testimony "not

20  credible." (AR 20).

21       Credibility determinations are within the province of the ALJ.  A two-step analysis applies at

22  the administrative level when considering a claimant's subjective credibility.  Smolen v. Chater, 80

23  F.3d 1273, 1281 (9th Cir. 1996).  First, the claimant must produce objective medical evidence of an

24  impairment and show that the impairment could reasonably be expected to produce some degree of

25

26

_____

27       [12]  The record contains two separate assessments prepared by state agency physicians.  (See AR 175-186, 208-
     221).  The first RFC assessment is dated March 10 and 11, 2005.  (AR 175-186).  The second report was prepared April
28  12, 2005 and affirmed on July 20, 2005.  (AR 208-186).  The ALJ apparently relied on the April 12 assessment.

17

1   symptom. Id. at 1281-82.  Pursuant to Social Security Ruling ("SSR") 96-7p,[13] the ALJ may not

2   disregard the claimant's pain testimony solely because there is a lack of medical records evidencing

3   an impairment that causes pain.  SSR 96-7p; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.

4   1997).  If there is no evidence that the claimant is malingering, the ALJ can reject the claimant's

5   testimony about the severity of his or her symptoms  "only by offering specific, clear and convincing

6   reasons for doing so." Smolen, 80 F.3d at 1281 (9th Cir. 1996).  This level of specificity is crucial

7   because, in its absence, effective judicial review may not be possible.  See Mersman v. Halter, 161 F.

8   Supp. 2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why

9   Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the

10   ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (the ALJ's decision "must be

11   sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the

12   adjudicator gave to the individual's statements and reasons for that weight").

13       Here, the dispute is whether the ALJ provided legally sufficient reasons for discounting

14   Claimant's subjective complaints.  The ALJ gave several reasons, including Claimant's drug-seeking

15   behavior and the lack of medical evidence to support her complaints that her condition worsened

16   after surgery.  (See generally AR 230-269).  While an ALJ cannot disregard Claimant's subjective

17   complaints regarding the severity of her symptoms based solely on a lack of objective medical

18   evidence to support it, the lack of objective medical evidence is a factor the ALJ may consider.

19   Bunnell v. Sullivan, 947 F. 2d 342, 345 (9th Cir. 1991).

20       In determining whether Claimant's medical improvement was related to an increase in her

21   RFC, the ALJ discounted Claimant's pain due to her constant requests for more medication and her

22   refusal to comply with the recommendations of the pain-management physician.  (AR 20).  In the

23   progress notes, Claimant complained of neck pain, for which she was prescribed pain medication,

24   including Vicodin, and some upper extremity weakness.  (See AR 283-303).  As ALJ Larsen found,

25   Claimant repeatedly appeared at the clinic complaining of pain and requesting refills of Vicodin.

26

27        [13] Social Security Rulings are accorded deference because they constitute the Commissioner's interpretation of the agency's regulations.  They do not, however, have the full force and effect of the law.  Ukolov v Barnhart, 420 F.3d

28   1002, 1005 n.2 (9th Cir. 2005).

(See, e.g. 230, 241, 248, 268, 269).  She reported a history of narcotics abuse, including intravenous drug use, for which she attended inpatient drug rehabilitation.  (AR 239, 253).  During a referral visit at the pain management clinic, when the doctor offered to re-evaluate her pain medication if Claimant stopped taking Vicodin for three weeks and attended four 12-Step meetings, the records indicate that Claimant resisted the idea and walked out of the office rather than comply with these conditions.  (AR  251).  Given Claimant's continuous requests for opiate drugs, in conjunction with the lack of evidence of severe medical problems, her testimony that the surgery increased her physical problems, and her failure to seek treatment for additional ailments that she testified she had, the ALJ found her not credible.  (AR 20).

In making his credibility assessment, the ALJ also considered conflicts between Claimant's subjective complaints and the medical evidence.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  As noted by the ALJ and discussed above, despite Claimant's assertions of widespread pain, the 2006 medical records reflect that her cervical symptoms were stable by May, neuropathy was ruled out in June, and her physical examinations in August and October were normal.  (AR 231, 235, 243, 333).  In assessing Claimant's current RFC, the ALJ rejected her claim that she suffered back pain from cartilage buildup after a rod was removed from her right femur in 2000, because none of her physicians mentioned any causal connection between the rod removal and back pain.  (AR 20, 91, 230-286, 308-324, 333).  The ALJ also discounted Claimant's testimony that she needed help to comb her hair, brush her teeth, tie her shoes, and pull up her pants, and that she suffered from bowel incontinence and could not hold utensils or a coffee cup without using two hands. (AR 20, 348-353).  The AR found it:

> "hard to believe she is as functionally impaired as this, particularly since her bilateral carpal tunnel syndrome was found on testing to be "mild" only.  I also question her complaints of bowel incontinence, particularly since there is no neuropathy in her bilateral lower extremities that might cause it.  Her complaints are also not as consistent as she alleges, nor have they been treated by her doctors, who mention them but provide no specific treatment tailored for control." (Internal citations omitted).

(AR 20, 264-266).

ALJ Larsen found that 1) Plaintiff's testimony regarding the severity of her pain and the degree to which it incapacitated her were not fully credible, 2) there was no objective medical

1   evidence to indicate that her condition worsened after her surgery and the objective medical evidence

2   indicated her condition had improved, 3) treatment notes indicated physical examinations within

3   normal limits, and 4) Plaintiff refused to comply with physician-recommended pain management

4   therapy.  The ALJ's reasons for discounting Plaintiff's subjective testimony are clear and convincing,

5   and supported by substantial medical evidence referenced in his decision.

6          Based on the foregoing, the Court finds no error in the ALJ's credibility assessment. Given

7   that the ALJ assessed Claimant's RFC based on the state agency's assessment, which was based on

8   the record, the post-surgical evidence and progress reports, Claimant's testimony, and the ALJ's

9   credibility findings, the Court finds no error in the ALJ's RFC findings, including the finding that

10  Claimant's medical improvement was related to an increase in her RFC.

11         Claimant also makes additional miscellaneous arguments.  For example, as to the ALJ's

12  reference to Claimant's drug-seeking behavior, she contends that the ALJ's analysis is erroneous

13  because she changed her medication from Vicodin to hydrocodone.  (Doc. 19, p.9).  Hydrocodone is

14  the generic for Vicodin and, thus, she continued taking the same drug.  Claimant also asserts that the

15  ALJ should have found a closed period of disability and explained the rationale for this period,

16  thereby rendering it easier to evaluate the disability and cessation-of- disability periods on appellate

17  review.  (Doc. 19, p. 7).  As discussed above,  the ALJ stated his reasons for finding Claimant

18  disabled, and, although ALJ Larsen did not specify that the period during which Claimant was

19  disabled constituted a "closed period of disability," given that the ALJ deemed Claimant disabled

20  and eligible for benefits from October 1, 2004 through October 31, 2005,  and subsequently found

21  that there was medical improvement that rendered Claimant no longer disabled, this is, essentially, a

22  "closed case."  (See fn. 4).

23         (B) The ALJ improperly accorded controlling weight to the opinions of state agency

24  physicians

25         Claimant contends that the ALJ failed to provide sufficient reasons for rejecting the opinions

26  of her treating physicians.  (Doc. 19, pp. 6-7, 9-10).  She asserts that the ALJ's stated rationale for

27  failing to credit their opinions – that they were based on Claimant's subjective complaints and were

28  not supported by "findings" – are insufficient and belied by the medical record.  (Id. at 7).  Claimant

1  adds that the ALJ erroneously accepted the pre-surgical RFCs and opinions prepared by

2  non-examining state agency physicians and do not constitute substantial evidence sufficient to reject

3  a treating physician's opinion.  (Id. at 7).

4      In Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated the deference that

5  should be given to a treating physician. The opinions of treating doctors should be given more

6  weight than the opinions of doctors who do not treat the claimant.  Reddick v. Chater, 157 F.3d 715,

7  725 (9th Cir.1998); Lester v. Chater, 81 F.3d at 830.  The weight accorded the reports prepared by

8  non-examining physicians depends "on the degree to which they provide supporting explanations for

9  their opinions." Ryan v. Commissioner of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (citing 20

10 C.F.R. § 404.1527(d)(3)).

11     If the treating physician's opinion is not contradicted by another physician, it may be rejected

12 only for "clear and convincing" reasons supported by substantial evidence in the record.  Reddick,

13 157 F.3d at 725; Lester, 81F.3d 821, 830 )9th Cir. 1995).  Even if the treating physician's opinion is

14 contradicted by another physician, the ALJ may not reject this opinion without providing "specific

15 and legitimate reasons" supported by substantial evidence in the record.  Murray v. Heckler, 722

16 F.2d 499, 502 (9th Cir.1983).  This can be done by the ALJ setting out a detailed and thorough

17 summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

18 findings.  Magallenes v. Bowen, 881 F.2d at 751.  The ALJ must do more than offer his conclusions.

19 He must set forth his own interpretations and explain why they, rather than the physician's, are

20 correct.  Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir.1988).  The opinion of a treating

21 physician, however, may be rejected if it is brief and conclusory, not supported by clinical findings,

22 or is based on subjective complaints.  Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002); Fair v.

23 Bowen, 885 F.2d 597, 605 (9th Cir. 1989);  Magallenes, 881 F.2d at 751.

24     Regardless of the weight given to a treating physician's medical opinion, it is not binding on

25 the ALJ with respect to the ultimate determination of disability.  See Batson v. Comm'r of Soc.

26 Admin., 359 F.3d 1190, 1194-1195 (9th Cir. 2004) (treating physician had opined that claimant "met

27 or equaled the criteria" for a listed impairment under 20 C.F.R. § 404, Subpt. P, App. 1, § 105C);

28 Magallanes, 881 F.2d at 751("treating physician's opinion is not, however, necessarily conclusive as

to . . . the ultimate issue of disability"); 20 C.F.R. § 416.927(e)(1) (physician's statement that a claimant is "disabled" or "unable to work" does not mean that the claimant is disabled as defined under the Act).

The record contains three documents that arguably constitute treating physician opinions. The first document is a general relief eligibility form dated August 28, 2006 and signed by Brian Curtis, M.D.  Dr. Curtis stated that Claimant suffered neck and arm pain, diagnosed her with cervical disc disease, and opined that she had a generally poor prognosis and a "likely permanent condition." (AR 224-225).  The second document is entitled " Verification of Physical/Mental Incapacity - General Assistance."  This one-page form dated August 11, 2006 appears to have been completed by "Dr. Meddy."   Dr. Meddy stated that Claimant is "permanently disabled," but provides no medical explanation for his opinion.  (AR 229).

The third document is dated October 16, 2006, entitled "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment ("Source Statement)," and completed by physician's assistant ("PA") Armand Valenzuela.  (AR 328-332).  In this multi-page, check-the-box questionnaire seeking information as to the patient's exertional ability and RFC, PA Valenzuela checked the box on the first page, which stated that Claimant "has not been capable of performing sustained SEDENTARY work on a regular and continuing basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule," checked the box on the second page, which stated that Claimant "has not been capable of performing sustained LIGHT work on a regular and continuing basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule, and would not be able to work if given the option to change positions frequently.  (AR 328, 329).  PA Valenzuela did not respond to the questions regarding Claimant's exertional abilities and limitations, and provided no information explaining why he reached the foregoing conclusions. (AR 330-332).

The ALJ declined to give controlling weight to the opinions of Dr. Curtis and PA Valenzuela and explained his reasons for doing so, to wit: "[s]ince neither of these opinions sets forth findings in support, and both appear based on [Claimant's] subjective complaints, which I do not believe, I do not grant much credence to either of them."  (AR 20).   The August 11, 2006 opinion also fails to contain clinical findings or medical evidence to support the opinion of disability and lacks legal

1  significance in any event, because disability determinations are expressly reserved to the

2  Commissioner.  20 C.F.R. § 416.927(e)(1), 416.927(e)(3); SSR 96-5p.

3      The ALJ  considered an assessment provided by state agency neurosurgeon, Sadda V. Reddy,

4  M.D. dated March 10, 2005, concluding that Plaintiff could perform a light range of work with

5  postural limitations.  (AR 186).  Despite this assessment, the ALJ found Claimant disabled through

6  October 2005.  (AR 20).  The ALJ also considered an assessment of state agency physician Brian

7  Ginsburg, M.D. dated July 20, 2005, opining that Plaintiff could perform light work with some

8  postural and manipulative restrictions within twelve months after her back surgery.  (AR 208-217).

9  The ALJ considered the opinions of Drs. Reddy and Ginsburg in their temporal context, and also

10  evaluated the medical evidence after July 20, 2005.  In discussing that evidence, he concluded that

11  the medical evidence, consisting of only "mild" bilateral carpal tunnel syndrome and "some disc.

12  protrusions and overall moderate central spine stenosis" were "not so extreme as to justify the

13  limited lifting capacity the state agency found" or any impairment in Claimant's ability to handle or

14  finger.  (AR 20). Accordingly, the ALJ found no reason to reject the state agency's opinion of

15  Claimant's RFC, and thus found that Claimant could perform a light range of work by November 1,

16  2005, consistent with Dr. Ginsburg's assessment.

17      Claimant's contention that the ALJ erred in rejecting the treating physicians' opinions and

18  accepting the state agency RFCs necessitated that Claimant prevail or a remand be entered lacks

19  merit.  (Doc. 19, p. 7).  The state agency assessments, which relied on and cited Claimant's medical

20  records, ascertained Claimant's exertional capacity, as opposed to the treating physicians'

21  unsupported statements that she was disabled.  The ALJ properly rejected the opinions of Claimant's

22  treating physicians because they were brief, conclusory, not supported by clinical findings, and based

23  on subjective complaints.  Thomas v. Barnhart, 278 F.3d at 957; Fair v. Bowen, 885 F.2d at 605 (9th

24  Cir. 1989);  Magallenes, 881 F.2d at 751.  The ALJ provided specific, legitimate reasons for his

25  decision not to give controlling weight to the treating physicians' opinions, and his reasons are based

26  on substantial evidence in the record.  Reddick, 157 F.3d at 725; Lester, 81F.3d at 830; Magallanes,

27  881 F.2d at 751; Murray, 722 F.2d at 502; 20 C.F.R. § 416.927(e)(1).  The ALJ did not err in

28  rejecting the treating physicians' opinions.

**CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court finds no error in the ALJ's analysis, and finds that the ALJ properly concluded Claimant's disability ceased after she recuperated from her surgery. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards.

Accordingly, it is RECOMMENDED that:

1.       Claimant's Social Security complaint be DENIED; and

2.       Judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Lisa K. Wilkins.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than eleven (11) days after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than ten (10) court days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d). The District Judge will review the Magistrate Judge's ruling, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 13, 2008**                                                 **/s/ Theresa A. Goldner**
                                                                             UNITED STATES MAGISTRATE JUDGE

24